**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Cade Edward Gant,

    Plaintiff,

v.

Commissioner of Social Security Administration,

    Defendant.

No. CV-20-08234-PCT-MTL

**ORDER**

   Plaintiff Cade Gant challenges the Social Security Administration's ("SSA") determination that he does not qualify for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Doc. 14-3 at 25–44.) Gant filed a Complaint with this Court seeking judicial review of that determination. (Doc. 1.) The Court has reviewed the briefs (Docs. 16, 18, 19) and the Administrative Record (Doc. 14, "AR") and now affirms the administrative law judge's ("ALJ") decision (AR at 25–44).

## I.   BACKGROUND

   On January 17, 2017, Gant filed his application for SSI, alleging that he had been disabled since December 19, 2016. (AR at 28.) The Commissioner denied Gant's application initially and on reconsideration. (*Id.*) Gant appeared at a hearing on August 15, 2019 before an ALJ. (*Id.* at 28, 45–64.) At the hearing, Gant amended the alleged onset date to January 17, 2017. (*Id.* at 28, 49.) On October 11, 2019, the ALJ issued a written decision finding Gant not disabled. (*Id.* at 25–44.) Gant requested review of his claim and on January 3, 2020, the Appeals Council denied review making the ALJ's

decision final and ripe for this Court's review. (*Id.* at 1–6.) Gant now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

After reviewing and considering the medical opinions and records, the ALJ evaluated Gant's disability based on the following severe impairments: autism spectrum disorder and borderline intellectual functioning. (*Id.* at 30.) The ALJ reviewed the entire record, including medical records and opinions and statements from Gant and his mother. (*See id.* at 30–44.) She extensively reviewed the record when making the mental health determination by considering the paragraph B criteria, paragraph C criteria, and the other criteria of listings 12.04, 12.05, and 12.06 before determining Gant "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." (*Id.* at 31; *see id.* at 31–33.)

After that, the ALJ calculated Gant's residual functional capacity ("RFC"). (*Id.* at 33–38.) She determined that Gant "has the [RFC] to perform a full range of work at all exertional levels," but with some "nonexertional limitations: [Gant] is able to perform simple routine work involving simple work related decisions and simple instructions involving few changes in the work setting not involving public contact." (*Id.* at 33; *see id.* at 33–38.) This RFC determination involved reviewing and analyzing different, and sometimes conflicting, pieces of medical and opinion evidence. (*Id.* at 33–38.) Although Gant had no past relevant work, given his RFC and the testimony of a Vocational Expert ("VE"), the ALJ determined that a significant number of jobs exist "in the national economy that [Gant] can perform." (*Id.* at 38.) And so, she found that Gant was "not disabled" for the relevant period. (*Id.* at 39.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on

legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). Finally, the Court may not reverse an ALJ's decision on account of an error that is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006). "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1119 n.11 (9th Cir. 2012) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations and internal quotation marks omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is

automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled; if not, the claimant is disabled. *Id.*

## III.    DISCUSSION

Gant raises three arguments on appeal. First, the ALJ failed to properly analyze Dr. Down's and Dr. Higgins' medical opinions which caused her to err when determining his RFC. (Doc. 16 at 14–21; Doc. 19 at 1–9.) Second, the ALJ improperly rejected Gant's mother's lay witness testimony. (Doc. 16 at 21–22; Doc. 19 at 9–11.) Third, the VE testimony did not support the ALJ's step five finding. (Doc. 16 at 23.)

### A.    Medical Opinion Evidence and RFC

Although an ALJ must consider all the medical evidence in the record, medical opinion sources are separated into three types: (1) treating physicians (who treat a claimant), (2) examining physicians (who examine but do not treat a claimant), and (3) non-examining physicians (who do not examine or treat a claimant). *Lester*, 81 F.3d at 830 (superseded by statute on other grounds). For disability benefit applications filed prior to March 27, 2017, treating medical sources are generally given more weight than non-examining sources due to a treating physician's heightened familiarity with a claimant's condition. 20 C.F.R. § 404.1527(a)(2). If the ALJ declines to give controlling weight to a treating source's opinion, the ALJ must consider several factors—including the examining relationship, treatment relationship, the length and nature of treatment, supportability, consistency, and specialization, among other factors—in deciding how to weigh the source's opinion. 20 C.F.R. § 404.1527(c). The ALJ must thereafter provide an explanation for the weight given to each medical source. 20 C.F.R. § 404.1527(f)(2). If certain evidence contradicts a treating physician's opinion, the ALJ must provide

"specific and legitimate reasons supported by substantial evidence" for rejecting that physician's opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Lester*, 81 F.3d at 830) (internal citation marks omitted).

Despite the deference generally afforded to treating physicians, the ALJ is not required to rely on them. If a treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record," the ALJ need not give it controlling weight. *Id*. § 404.1527(c)(2); s*ee also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings). If a treating physician's opinion is not given controlling weight, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) in assigning its relative weight. When rejecting a treating physician's testimony, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Orn*, 495 F.3d at 631 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

In laymen's terms, RFC is what the claimant can do in a work environment in spite of their disabilities or limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations define RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). "The ALJ assesses a claimant's RFC based on all the relevant evidence in [the] case record," to determine the claimant's capacity for work. *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (quotation marks and citation omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ should consider a claimant's ability to meet physical and mental demands, sensory requirements, and other functions. *See* 20 C.F.R. §§ 404.1545(b)–(d), 416.945(b)–(d). "[I]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' The RFC therefore should be

exactly the same regardless of whether certain impairments are considered 'severe' or not." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (cleaned up). Additionally,

> The RFC assessment must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate. In other words, the ALJ must take the claimant's subjective experiences of pain into account when determining the RFC.

*Laborin*, 867 F.3d at 1153 (cleaned up).

"At step four, a claimant has the burden to prove that he cannot perform his past relevant work 'either as actually performed or as generally performed in the national economy.'" *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016) (quoting *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002)). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). An ALJ is free to consider any activities that "may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). It is well established that an ALJ is also empowered to note a claimant's daily activities that "'involv[e] the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The parties disagree over the meaning of the conclusion of Dr. Down's medical opinion. In this portion of her opinion, she explained Gant's limitations in narrative form:

> UNDERSTANDING AND MEMORY
> Clmt able to understand and remember simple instructions, simple work procedures, and simple work locations. Clmt will do better in jobs in which training is provided through

demonstrations and supervised practice.

SUSTAINED CONCENTRATION AND PERSISTENCE
Clmt able to carry out simple instructions, perform within a schedule, make simple work related decisions. Clmt will do better in jobs in which a coworker such as a leader or supervisor is present to provide occasional redirection.

SOCIAL INTERACTION
Clmt able to ask questions and request assistance. Clmt will do better in jobs with limited social interaction[ ]superficial and occasional. Clmt able to work alone.

ADAPTATION
Clmt able to recognize/avoid hazards. Clmt will do better in jobs with static tasks and where changes can be explained. Clmt will do better in jobs without strict time deadlines and

Based on this assessment, clmt able to meet the basic mental demands of competitive, remunerative, unskilled work **_with job suggestions (above)_** on a sustained basis.

(AR at 75 (emphasis added).)

Gant argues that the ALJ erred by giving Dr. Down's opinion great weight and not adopting these job restrictions in the RFC without explaining why she failed to include them. (*See* Doc. 16 at 14–18.) Specifically, Gant asserts that the ALJ erred when she failed to adopt Dr. Down's conclusion that he required "occasional redirection by a leader or supervisor; a limitation to superficial and occasional social interaction; jobs with static tasks where changes could be explained; and jobs without strict timelines" in order to work. (*Id.* at 16; *see id.* at 14–16.) Gant argues that this is because the parameters listed by Dr. Down's opinion are necessary restrictions on the work he can do, not suggestions to optimize Gant's working ability. (*See id.* at 16–17.) He posits that, "in Dr. Downs' opinion, Gant is able to meet the basic mental demands of competitive, remunerative, unskilled work only if the suggestions she made are incorporated." (*Id.* at 17.) Gant asserts that if the ALJ did not adopt these restrictions from Dr. Down's opinion, the ALJ

must at least explain why she made that decision. (*Id.*) Finally, Gant argues that Dr. Down's opinion, as he interprets it, is well supported by the record. (*See id.* at 17–18.)

The Commissioner argues that the ALJ properly afforded Dr. Down's opinion great weight and properly incorporated that opinion in the RFC. (*See* Doc. 18 at 8–12.) The Commissioner asserts that the ALJ's RFC determination was well supported by the record. (*Id.* at 8–9.) The Commissioner also argues that Dr. Down's "comments that [Gant] would 'do better' under certain enumerated conditions . . . were recommendations about the best work environment for [Gant], not functional limitations that the ALJ was required to consider in assessing [Gant's] RFC." (*Id.* at 9–10.) Because Dr. Down's opinion "did not indicate that such conditions were necessary for [Gant] to work," the Commissioner concludes that the ALJ did not err when she failed to incorporate Dr. Down's recommendations about a work environment where Gant would "do better" in the RFC. (*Id.* at 11; *see id.* at 10–12.) Specifically, the Commissioner argues, those conditions were not necessary because there were mere suggestions, which "are not opinions on specific functional limitations that the ALJ was required to evaluate." (*Id.* at 12.) The Commissioner also argues that this interpretation of Dr. Down's opinion is supported by a separate state agency psychologist's opinion, Dr. Foster-Valdez's. (*Id.*) Thus, the RFC was consistent with Dr. Down's opinion. (*See id.* at 10–12.)

Gant counters that the ALJ failed to address Dr. Down's comments, which are more than mere suggestions, and that this error is grounds for remand. (*See* Doc. 19 at 4–9.) Specifically, Gant argues that (1) Dr. Down's opinion is that Gant is only able to work in an environment where those suggestions are implemented; (2) "Dr. Downs' status as a State Agency medical consultant shows her statements are mandates and not recommendations;" and (3) Dr. Down's use of the word "with" in her opinion coupled with the fact that Dr. Foster-Valdez fully adopted Dr. Down's opinion except for the "with" language support his argument. (*Id.* at 6; *see id.* at 5–8.)

The Court agrees with Gant. The ALJ assigns great weight to Dr. Down's opinion, but fails to explain why it does not incorporate the restrictions that Dr. Down articulates.

(*See* AR at 33, 38, 75.) Dr. Down's opinion unequivocally states  that "[b]ased on [her] assessment, [Gant is] able to meet the basic mental demands of competitive, remunerative, unskilled work ***with job suggestions (above)*** on a sustained basis." (AR at 75 (emphasis added).) There is one clear reading of Dr. Down's conclusion: if the job suggestions she lists are provided, Gant is able to meet the basic demands of competitive, remunerative, unskilled work on a sustained basis. An ALJ must support her decision with substantial evidence. Here, the ALJ provides no explanation for why she ignored Dr. Down's penultimate phrase, "with job suggestions (above)." It is clear error for the ALJ to afford Dr. Down's opinion great weight, to not include those restrictions in the RFC, and to not explain why those restrictions were excluded.

This error alone is grounds for remand. The ALJ would need to perform additional administrative proceedings to determine the proper weight to assign Dr. Down's medical opinion. Such proceedings would substantially change the record. That would, in turn, significantly affect her RFC determination, her analysis of Theresa Gant's testimony, and the VE testimony. For this reason, the Court forgoes ruling on the parties' arguments regarding these additional issues because, after the record is properly developed, such conclusions would be irrelevant.

## IV.   CREDIT-AS-TRUE RULE

After determining that the ALJ made an error sufficiently serious to warrant a remand, the Court decides whether it will apply the credit-as-true rule. The credit-as-true rule allows a court to remand a Social Security case for an award of benefits rather than remand the case for additional evidence. *Treichler*, 775 F.3d at 1101–02. Whether the credit-as-true rule is mandatory or discretionary in the Ninth Circuit is unclear because Ninth Circuit jurisprudence is split on the issue. *Compare Vasquez*, 572 F.3d at 593–94, *and Garrison v. Colvin*, 759 F.3d 995, 1019–23 (9th Cir. 2014), *with Treichler*, 775 F.3d at 1099–02. The rule can only be applied when three elements are met: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting

evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Even then, the rule is rarely applied because the decision to remand or apply the rule is discretionary and courts "frequently exercise[] [their] discretion to remand for further proceedings, rather than benefits." *Treichler*, 775 F.3d at 1102.

The credit-as-true rule does not apply here. Because Dr. Down's medical opinion is only a fraction of the record the ALJ must consider, she would not be required to find Gant disabled on remand if Dr. Down's medical opinion was credited as true. The record in this case is not perfectly consistent. The opinions of Dr. Higgins, Chrisman, and others—along with other pieces of evidence in the record—would need to be weighed against Dr. Down's opinion. Accepting Dr. Down's opinion as true could affect the ALJ's RFC determination, recolor her interpretation of Theresa Gant's lay witness testimony, and necessitate new VE testimony. But it does not require the ALJ to find Gant disabled. Further administrative proceedings will help the ALJ determine the benefits Gant deserves. Thus, the Court remands this case for further administrative proceedings to develop the record as necessary.

## V.   CONCLUSION

Accordingly,

**IT IS ORDERED remanding** this matter to the Social Security Administration for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter final judgment consistent with this Order and close this case.

Dated this 10th day of March, 2022.

*Michael T. Liburdi*

Michael T. Liburdi
United States District Judge